IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

BENNIE JOHNSON,          :

     Plaintiff,          :

vs.                      :          CA 08-0394-CG-C

ANSELL PROTECTIVE        :
PRODUCTS, et al.,
                         :
     Defendants.

## REPORT AND RECOMMENDATION

     This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the removal petition (Doc. 1), plaintiff's motion to remand (Doc. 15), the defendants' opposition to the remand motion (Doc.19), and the telephone arguments of the parties on September 16, 2008. Upon consideration of the foregoing pleadings, and the arguments of counsel, the Magistrate Judge recommends that the Court **GRANT** the motion to remand and **REMAND** this case to the Circuit Court of Perry County, Alabama from whence it came.

## FINDINGS OF FACT

     1.     In April of 2007, plaintiff filed a combined product liability and

worker's compensation action in the Circuit Court of Perry County, Alabama against his employer, Citation Marion, Inc., and numerous fictitious parties, arising out of a workplace accident which resulted in Johnson suffering severe burns to his face, neck, shoulders, hands and buttocks. (Doc. 1, Exhibit A, COMPLAINT)[1] Throughout the complaint, plaintiff claims he suffered damages which include mental anguish (*see id*. at ¶¶ 21, 25 & 48) and in the last paragraph he seeks "exemplary damages to the extent permitted by law." (*Id*. at 7) The factual allegations of the complaint read as follows:

> 12.     On January 23, 2006, Plaintiff was employed at Citation Marion, Inc., which is in the business of manufacturing cast iron products and is located in Marion.

> 13.     At approximately 5:30 a.m., a coworker was transferring a ladle of liquid, hot metal to Plaintiff so that Plaintiff could rake the slag off of the top. Upon information and belief, this was the first day and first occasion that this particular ladle had been utilized.

> 14.     As the ladle was being transferred, it exploded and caused injury to Plaintiff.

> 15.     When the explosion occurred, Plaintiff was covered in liquid, hot metal. He sustained severe burns to his face, neck, shoulders, hands and buttocks. Due to the burns, Plaintiff, Bennie Johnson, is permanently scarred. As a result of

---

[1]     In addition to the assertion of the worker's compensation claim against Citation Marion, plaintiff asserted five other claims: (1) negligent failure to warn; (2) design defect; (3) negligence; (4) negligent construction and assembly; and (5) a product liability claim under Alabama's Extended Manufacturer's Liability Doctrine. (*See id*. at ¶¶ 17-34 & 44-48)

the injuries that he sustained, Plaintiff has incurred expenses for medicine, physicians fees and hospital charges. In addition, Plaintiff lost wages and income. Furthermore, Plaintiff has endured pain and suffering due to his burns and other injuries. He has also suffered from emotional distress and mental anguish.

16.    At the time of the incident, Plaintiff was wearing protective clothing. Specifically, Plaintiff was wearing protective gloves. When the liquid, hot metal touched the gloves, the gloves began to burn. The gloves were not supposed to burn and melted to the Plaintiff's hands. Upon information and belief, the gloves burned due to a defect.

(*Id*. at ¶¶ 12-16)

2.    In October of 2007, plaintiff amended his complaint and added as a defendant Liberty Glove, Inc. (*See* Doc. 1, FIRST AMENDED COMPLAINT) Therein, plaintiff alleged that Liberty Glove, Inc. manufactured the protective gloves plaintiff was wearing at the time of the accident. (*See id*. at ¶¶ 6 & 16) Plaintiff did not make any significant or relevant change to the claims asserted against the named defendants or change his claim for damages. (*See* Doc. 1, FIRST AMENDED COMPLAINT)

3.    On October 25, 2007, plaintiff filed a second amended complaint and therein added as a party defendant Modern Engineering Company, Inc. (*See* Doc. 1, SECOND AMENDED COMPLAINT) Plaintiff alleged that Modern Engineering manufactured, distributed and sold the ladle plaintiff and

3

his coworker were transferring when the ladle exploded causing injury to Johnson. (*See id*. at ¶ 3 & 9) Again, plaintiff did not make any significant or relevant change to the claims asserted against the named defendants or change his claim for damages. (*See id*.)

4.      By order dated January 4, 2008, the worker's compensation claim asserted against Citation Marion was severed from the remaining claims for purposes of trial. (*See* Doc. 1, at ¶ 9)

5.      On June 16, 2008, plaintiff filed a third amended complaint and therein added as parties defendant Ansell Protective Products and Teemark Corporation. (Doc. 1, THIRD AMENDED COMPLAINT) Plaintiff alleges in his most recent complaint that defendant Ansell Protective Products manufactured, distributed and sold the protective gloves plaintiff was wearing when the accident occurred (*see id*. at ¶¶ 3 & 11) and that defendant Teemark Corporation manufactured, distributed and sold the ladle plaintiff and his coworker were transferring when the ladle exploded causing injury to Johnson (*see id*. at ¶ 2). Plaintiff made no changes in his theories of recovery asserted against Ansell and Teemark; all five claims are the same claims he has consistently pursued in the Circuit Court of Perry County, Alabama, albeit against different defendants.

4

6.     In the notice of removal, filed July 17, 2008, the defendants contend that removal is proper based on diversity of citizenship. (Doc.1, at ¶¶ 15-20)

## AMOUNT IN CONTROVERSY

21.     This Defendant respectfully submits that the amount in controversy in this case is satisfied. The plaintiff has failed to specify or otherwise make claim for a specific monetary amount of damages in the original and amended complaints. Therefore, Teemark must prove by a preponderance of the evidence that the amount in controversy actually exceeds the $75,000.00 jurisdictional requirement.

22.     While not expressed in the body of the complaint, it is the understanding and belief of this Defendant that the plaintiff was "covered" in liquid, hot metal, resulting in burns to his face, neck, shoulders and buttocks.

23.     It is further the understanding and belief of this Defendant that the plaintiff was partially disabled, suffered permanent scarring, as well as pain and suffering due to his burns. He claims that he incurred expenses for medicine, physicians fees and hospital charges. In addition, the Plaintiff claims lost wages and income. Furthermore, the Plaintiff claims that he suffered emotional distress and mental anguish . . . .

24.     In addition to seeking compensatory damages for the injuries allegedly suffered by the Plaintiff, the third amended complaint makes demand or otherwise seeks "exemplary damages to the extent permitted by law." In that regard, paragraph 32 of the third amended complaint avers that the Defendants' breach of duty was both "reckless and wanton."

25.     It is the understanding and belief of this Defendant that the Plaintiff has received medical care and treatment for his burn

5

injuries (which involved a skin graft for his left hand), resulting in approximately $24,700.00 in bills associated with that care and treatment.

26.    In determining the amount in controversy, the Honorable Court should also consider the fact that the plaintiff will likely seek to recover punitive damages. Prospective punitive damages must be considered when calculating the amount in controversy unless it is apparent to a legal certainty that they cannot be recovered[.] *Holl[e]y Equipment Company v. Credit Alliance Corporation*[,] 821 F.2d 1531, 1535 (11th Cir. 1987). While courts have been more likely to reduce awards of punitive damages, it is not uncommon for punitive damage awards of three times the compensatory damages to be upheld. In such a case as this, a compensatory award for as little as $24,700.00, when coupled with the punitive damage award of three time that, would exceed the jurisdictional minimum of this court. As discussed above, the plaintiff seeks to recover exemplary (or punitive) damages in this case. Similarly, a review of the Alabama Jury Verdict Reporter, Third Edition, January 2005, reveals that the median punitive damage award in Alabama during 2002, 2003 and 2004 exceeded the jurisdictional minimums of this court. Specifically, in 2004, the average punitive damage verdict awarded was $70,639,000 (sic), and the median for 2004 was $78,583,000 (sic). Similarly, in 2003, the average punitive damage award was $1,127,788,000 (sic) and the 2003 median punitive damage award was $126,000. Finally, the average punitive damage award in 2002 was $2,843,162,000 (sic) while the 2002 median punitive damage award was $103,836.

27.    As has been demonstrated by the Alabama Jury Verdict Reporter, awards of punitive damages in this state typically of themselves alone exceed the jurisdictional minimum[] of this court and accordingly, the amount in controversy in this case has been met.

28.    However, if the plaintiff responds to this pleading and

6

stipulates or otherwise contends that the amount in controversy is less than $75,000.00 at the trial of the matter in state court, then this Defendant will consent to the remand of this action.

29.   28 U.S.C. § 1446(b) provides only that a notice of removal contain a "short and plain statement of the grounds for removal." That statute does not provide for an evidentiary submission with a notice of removal. 28 U.S.C. § 1446(c)(5) does provide for evidentiary hearings by subsequent court order. If the plaintiff contests that $75,000.00 is in controversy or if this court believes the issue requires a further evidentiary hearing, this Defendant respectfully requests that limited discovery be permitted on that issue.

(*Id*. (most internal citations omitted))[2]

7.   Plaintiff filed his motion to remand on August 12, 2008. (Doc.

15) Therein, plaintiff argues that because there remains at least one fictitious

defendant to be named and this defendant could be an Alabama defendant

complete diversity is absent. (*Id*. at 2)[3] In addition, plaintiff contends that

---

[2]   Defendant Ansell Protective Products filed its consent to the removal on July 10, 2008. (Doc. 7)

[3]   Plaintiff does not cite to any case law in support of his argument in this regard; therefore, it is **REJECTED** in light of the removal statute's clear language that "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a); *see also Davis ex rel. Estate of Davis v. General Motors Corp*., 353 F.Supp.2d 1203, 1205 n.3 (M.D. Ala. 2005) ("The court notes that Plaintiffs' Complaint also lists as defendants several fictitious parties, the identity of which are not yet known to Plaintiffs. For purposes of removal, the court does not consider the citizenship of fictitious defendants in assessing complete diversity."); *Howell v. Circuit City*, 330 F.Supp.2d 1314, 1317 (M.D. Ala. 2004) ("It is well established that the court's diversity jurisdiction is established at the time the notice of removal is filed. . . . Furthermore, under the amended removal statute, the citizenship of defendants sued under fictitious names shall not be considered when determining diversity jurisdiction. . . . This court considers the clear language of the statute to be dispositive of the issue.").

because defendant Teemark did not file its petition for removal within one year after the action was initiated on April 20, 2007[4]  the removal petition is untimely.

8.      In taking plaintiff's motion to remand under submission, the undersigned raised *sua sponte* the issue of whether the removing defendants had "produced the type of evidence necessary to satisfy their burden of establishing by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs." (Doc. 16, at 1-2)

9.      In opposition to the motion to remand, the removing defendants contend that "while no dollar figure is named, the injuries alleged and damages sought on the face of Plaintiff's Complaint demonstrate that the amount in controversy exceeds $75,000.00." (Doc. 19, at 3-4, citing *Sanderson v. Daimler Chrysler Motor Corp.*, 2007 WL 2988222 (S.D.Ala. 2007))

> The amount in controversy is readily apparent from the Complaint. Indeed, as master of his claims, Plaintiff is the party most capable of saying whether the "amount in controversy" or what he "claims" exceeds $75,000.00. Based on the Complaint alone, the damages at issue more likely than not exceed $75,000.00. For example, Plaintiff asserts that he "was <u>covered in liquid, hot metal</u>" during the incident and "sustained <u>severe burns to his face, neck, shoulders, hands and buttocks</u>." Besides being "<u>permanently scarred,</u>" Plaintiff also asserts claims for

---

[4]      The undersigned notes that when plaintiff initially filed his complaint on April 20, 2007, the only named defendant was Citations Marion, his employer.

medical expenses, pain and suffering, emotional distress and mental anguish.

This is exactly the type of injury that "by [its] nature" is "so substantial as to make it readily apparent" that more than $75,000.00 is at issue. This Court is empowered to use its "common sense and experience" in finding that the jurisdictional amount in controversy is met, where[,] as here, "it is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction." Respectfully, this Court should follow the rationale of <u>Sanderson</u>, and the precepts of <u>Lowery</u>, to find that the amount in controversy is readily deducible from the Complaint and, therefore, the jurisdictional amount is met.

.      .      .

Defendants are not asking this Court to guess or speculate as to what is in controversy. They merely ask the Court to look to Plaintiff's own assessment of the case and the allegations made in his Complaint to guide the Court as to the true amount in controversy– an amount that logically exceeds $75,000.00.

(*Id.* at 7-8 & 9 (internal citations and footnotes omitted; internal emphasis retained))[5]

---

[5]      In response to plaintiff's argument that this action is due to be remanded due to the defendants' failure to file the removal petition within the one year limitation set forth in 28 U.S.C. § 1446(b), defendants argue that plaintiff has waived this procedural defect by failing to timely file his motion to remand. (Doc. 19, at 9-11) While the undersigned agrees with the defendants that plaintiff has waived all procedural defects by failing to file his motion to remand within thirty (30) days of the filing of the notice of removal, by couching their argument in this manner, they appear to be backhandedly admitting that plaintiff makes a valid argument in this regard. (*See id.*) However, the undersigned reads nothing in the removal statue which supports the plaintiff's argument in this regard.

The notice of removal of a civil action or proceeding **shall be filed within thirty days after the receipt by the defendant, through service or otherwise,**

**of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based,** or within thirty days after the service of summons upon the defendant if such initial pleading has been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (emphasis supplied).  There is nothing before the Court to indicated that either of the removing defendants had knowledge of the plaintiff's lawsuit until they were served with the third amended complaint; therefore, the one year language contained in § 1446(b) has no application to this case at the present moment. That the statute meant to confer upon each defendant a thirty day period of time to file a notice of removal, upon being served with the complaint, is clear from the Eleventh Circuit's recent decision in *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202 (2008), *appendix opinion released sub nom. Bailey ex rel. Estate of Beal v. Janssen Pharmaceutica, Inc.,* 2008 WL 2898214, *1 (2008) (*per curiam* unpublished opinion issued simultaneously with published opinion and reversing in part and affirming in part the district court's dismissal of appellant's First Amended Complaint). "We hereby adopt the last-served defendant rule, which permits each defendant, upon formal service of process, thirty days to file a notice of removal pursuant to § 1446(b)." 536 F.3d at 1209; *see also id.* at 1205 ("[W]e reject appellant's argument and interpret § 1446(b) to permit each defendant thirty days in which to seek removal.").

Based upon the foregoing, plaintiff's untimeliness argument is due to be **REJECTED**. This is important because of the impact it has on an argument advanced by the removing defendants. The removing defendants suggest that if this Court engages in an expansive reading of *Lowery* "personal injury suits in Alabama would *never* be subject to removal." (Doc. 19, at 5 n.1) In fact, nothing could be further from the truth. What *Lowery* teaches is that district courts should never speculate when it comes to damages and their jurisdiction and, therefore, should necessarily reject  prematurely filed removal petitions. *Cf.* 483 F.3d at 1215, n.63 (finding it "highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us–where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice–without seriously testing the limits of compliance with Rule 11. Unlike the typical plaintiff who originally brings a diversity action in federal court, the removing defendant

_____

generally will have no direct knowledge of the value of plaintiff's claims."). Accordingly, defendants should eschew knee-jerk removals where damages in excess of this Court's jurisdiction are not clear on the face of the complaint or readily deducible from evidence set forth in the removal petition. *See Constant v. International House of Pancakes, Inc*., 487 F.Supp.2d 1308, 1308 (N.D. Ala. 2007) ("If this court turns out to be right when, by separate order, it grants the motion to remand filed by plaintiff . . ., the court will have come close to proving that the day of the knee-jerk removal of diversity tort cases from state to federal court within the three states comprising the Eleventh Circuit came to an end on April 11, 2007, when *Lowery v. Alabama Power Company*, 483 F.3d 1184 (11th Cir. 2007), was decided. 'Circumspection' and 'compunction' will be the future watchwords for diversity removing defendants in the Eleventh Circuit, except in the few cases which begin with a state court complaint with an *ad damnum* clause praying for more than $75,000."). Instead, defendants in this position should await "other paper" from which it can be ascertained that the case is removable. *Lowery, supra,* 483 F.3d at 1215, n.63 ("To the extent the defendant does obtain knowledge of the claims' value, it will generally come from the plaintiff herself in the form of information in an 'other paper.' [] This is so because a plaintiff who has chosen to file her case in state court will generally wish to remain beyond the reach of federal jurisdiction, and as a result, she will not assign a specific amount to the damages sought in her complaint. In such a case, like the case before us, the defendant would need an 'other paper' to provide the grounds for removal under the second paragraph of § 1446(b). In the absence of such a document, the defendant's appraisal of the amount in controversy may be purely speculative and will ordinarily not provide grounds for his counsel to sign a notice of removal in good faith."); *see Middlebrooks v. Johnson & Johnson Co.,* 2008 WL 4003926, *3 (M.D. Ga. 2008) ("Plaintiff's position-that it was 'readily deducible' from her complaint that the amount in controversy exceeded the statutory limits-is untenable in light of *Lowery*. Defendants in this case heeded the Eleventh Circuit's warning and intentionally refrained from filing a notice of removal until they could meet their burden of proving, by a preponderance of the evidence, that removal was appropriate. . . . From the outset of this case, Defendants sought an unambiguous statement from the Plaintiff regarding the amount in controversy, but it was not until the April 1, 2008 hearing that the Plaintiff provided Defendants with an unambiguous statement regarding the value of her claim [for the wrongful death of her son]. Thus, the time for filing a notice of removal did not begin to run until April 1, 2008. Since Defendants filed their notice of removal within thirty days of this date, the Court finds Defendants' notice of removal timely."). When a case is removed under these circumstances, this Court will not inconsistently accept an opposing plaintiff's argument that given the nature of his injuries and damages and verdicts in similar cases that his complaint was removable thirty days from service of the complaint. *See, e.g., Williams v. Wal-Mart Stores, Inc.,* 534 F.Supp.2d 1239 (M.D. Ala. 2008) (rejecting plaintiff's argument in support of remand that it was facially apparent from the detailed listing of injuries in the complaint that the case was removal within thirty days of service of the complaint; finding Wal-Mart had no basis to remove plaintiff's lawsuit based solely on her complaint).

11

## CONCLUSIONS OF LAW

1.      "Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000).  Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).  However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999).

2.      "[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *see also Triggs v. John Crump Toyota, Inc*., 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted) ("[T]he removing party bears the burden

of demonstrating federal jurisdiction."); *Tapscott, supra* ("A removing defendant has the burden of proving the existence of federal jurisdiction."). Therefore, in this case, the burden is on the removing defendants to establish complete diversity, that is, the plaintiffs are all diverse from the defendant, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, to establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott, supra*, 77 F.3d at 1357 ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $50,000 jurisdictional requirement."). More specifically, "the removing defendant[s] must establish the amount in controversy by '[t]he greater weight of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.'" *Lowery, infra*, 483 F.3d at 1209, quoting *Black's Law Dictionary* 1220 (8th ed. 2004).

        3.      The removing defendants have failed to establish by a preponderance of the evidence that the amount in controversy in this case more

likely than not exceeds the $75,000 jurisdictional requirement. This Court's

analysis of this issue is necessarily informed by the Eleventh Circuit's recent

decision in *Lowery v. Alabama Power Co.,* 483 F.3d 1184 (2007), *cert. denied*

*sub nom. Hanna Steel Corp. v. Lowery*, ___ U.S. ___, 128 S.Ct. 2877, 171

L.Ed.2d 812 (2008).[6]

> [W]e conclude that the removal-remand scheme set forth in 28
> U.S.C. §§ 1446(b) and 1447(c) requires that a court review the
> propriety of removal on the basis of the removing documents. If
> the jurisdictional amount is either stated clearly on the face of
> the documents before the court, or readily deducible from them,
> then the court has jurisdiction. If not, the court must remand.
> Under this approach, jurisdiction is either evident from the
> removing documents or remand is appropriate.
>
> .    .    .
>
> [U]nder § 1446(b), in assessing the propriety of removal, the
> court considers the document received by the defendant from the
> plaintiff-be it the initial complaint or a later received paper-and
> determines whether that document and the notice of removal
> unambiguously establish federal jurisdiction. This inquiry is at
> the heart of a case, such as the one before us, in which the
> plaintiffs challenge removal by filing a timely motion to remand
> under § 1447(c). In assessing whether removal was proper in
> such a case, the district court has before it only the limited
> universe of evidence available when the motion to remand is
> filed-i.e., the notice of removal and accompanying documents. If
> that evidence is insufficient to establish that removal was
> proper or that jurisdiction was present, neither the defendants
> nor the court may speculate in an attempt to make up for the

---

[6]      "Although *Lowery* was decided in a Class Action Fairness Act case, its holdings
are not limited to that context." *Carswell, infra,* at *1, n.1 (citation omitted).

14

notice's failings. The absence of factual allegations pertinent to
the existence of jurisdiction is dispositive and, in such absence,
the existence of jurisdiction should not be divined by looking to
the stars.

.     .     .

Though the defendant in a diversity case, unlike the plaintiff,
may have no actual knowledge of the value of the claims, the
defendant is not excused from the duty to show by fact, and not
mere conclusory allegation, that federal jurisdiction exists.
Indeed, the defendant, by removing the action, has represented
to the court that the case belongs before it. Having made this
representation, the defendant is no less subject to Rule 11 than
a plaintiff who files a claim originally. Thus, a defendant that
files a notice of removal prior to receiving clear evidence that
the action satisfies the jurisdictional requirements, and then later
faces a motion to remand, is in the same position as a plaintiff
in an original action facing a motion to dismiss.

*Id*. at 1211, 1213-1215 & 1217 (internal citations and footnotes omitted).

4.      In accordance with *Lowery*, therefore, this Court looks solely to

plaintiff's complaint and the notice of removal to assess the propriety of

removal. The undersigned quickly discerns that the jurisdictional amount of

$75,000 is nowhere clearly stated on the face of the complaint. Moreover, the

undersigned recommends that the court find that such an amount is not readily

deducible from the complaint or the removal petition. The removing

defendants make several arguments with respect to why this Court should find

15

that the jurisdictional amount is readily[7] deducible from the complaint. In the removal petition and in response to the plaintiff's motion to remand, the defendants cite to plaintiff's request for punitive damages, which must be considered by this Court,[8] and contend that since it is "not uncommon for punitive damage awards of three times the compensatory awards to be upheld[]"[9] and plaintiff has expended approximately $24,700.00 on medical bills (and seeks other damages like mental anguish), they have demonstrated that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs. (Doc. 1, at ¶¶ 25-27 (citing general 3:1 ratio principle and various Alabama publications); Doc. 19, at 9 n.3)) In addition, defendants make clear in their opposition to the motion to remand that they rely primarily on an argument they allude to in the removal petition, which is that given the

---

[7]     Readily means "easily" or "promptly." WEBSTER'S II, NEW RIVERSIDE UNIVERSITY DICTIONARY, at 974 (1994).

[8]     As noted by Teemark in the removal petition, it is clear that the Eleventh Circuit reiterated in *Holley Equipment Co. v. Credit Alliance Corp.,* 821 F.2d 1531 (1987) that "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages, must be considered, unless it is apparent to a legal certainty that such cannot be recovered." *Id.* at 1535 (internal citations and footnote omitted). However, this proposition of law does not lessen the removing parties' burden to prove that the jurisdictional amount in controversy exceeds $75,000 nor does it otherwise shift any burden to the plaintiff to prove the contrary; any suggestion to the contrary is **REJECTED**.

[9]     The comments by defense counsel during the September 16, 2008 telephone conference, echoing the 3:1 ratio argument contained in the removal petition, are considered by the undersigned to fall within the category of outside "evidence" rejected in *Lowery*. *See infra*.

nature of the injuries alleged by plaintiff in the complaint (and the damages sought) it is "facially apparent" or "readily deducible" that the amount in controversy in this case exceeds the jurisdictional requirement. (Doc. 19, at 3-8; *see* Doc. 1, at ¶¶ 22-24) In support of this argument, defendants urge the undersigned to follow *Sanderson v, Daimler Chrysler Motor Corp*., 2007 WL 2988222 (S.D. Ala. 2007) and hold that "[c]ertain injuries are by their nature so substantial as to make it readily apparent that the amount in controversy requirement is satisfied." *Id*. at *1; *see also id*. at *2 ("[T]he complaint alleges that Theresa Sanderson has experienced 'serious and permanent disfigurement and scarring to her face and body.' This allegation establishes, for purposes of the jurisdictional inquiry, that Sanderson's facial appearance-around which members of the human race base much of their self-concept-has been badly damaged and that the damage will last a lifetime."). Finally, in opposition to the motion to remand, defendants contend that "past precedent supports the Defendants' assertion that more than $75,000.00 is in controversy in this products liability, punitive damages case." (Doc. 19, at 8 (citations omitted))

5.      As *Lowery* makes clear, however, such "'evidence' . . . fails to support the defendants' contention that [this] [] court [has] jurisdiction over this action." 483 F.3d at 1220.

First, we note that this evidence regarding the value of other tort claims was not received from the plaintiffs, but rather was gathered from outside sources. As such, the evidence is not of the sort contemplated by § 1446(b). Even if the defendants had received the evidence of other suits from the plaintiffs, we question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit. Looking only to this evidence and the complaint, the facts regarding other cases tell us nothing about the value of the claims in this lawsuit. Even were we to look to evidence beyond that contained within the notice of removal, in the present dispute-with a record bereft of detail-we cannot possibly ascertain how similar the current action is to those the defendants cite.

*Id.* at 1220-1221 (footnote added). Thus, the Alabama "punitive damages"[10] general rule and publications, along with the "past precedent,"[11] cited by the removing defendants, are due to be rejected. *See Siniard v. Ford Motor Co.,* 554 F.Supp.2d 1276, 1277 & 1279 (M.D. Ala. 2008) ("This is a product liability case arising out of a motor vehicle accident in Alabama on April 5, 2006, which claimed the life of a Tennessee resident citizen named Deborah

---

[10]    While *Siniard* and *Carswell* plainly lay to rest the removing defendants' punitive damages argument in the wake of *Lowery*, the undersigned would also note that recently, in *Howell v. Fields Realty, LLC,* 2008 WL 2705383, *1 (M.D. Ala. 2008), the court stated that "a demand for punitive damages is insufficient to satisfy the amount in controversy requirement." *See also id.* ("[A] defendant does not meet its burden by pointing out that the plaintiff seeks punitive damages: '[T]his argument begs the question of what those punitive damages are likely to be-a question that [the defendant] bears the burden of answering.'").

[11]    This "evidence" is nothing more than evidence obtained from outside sources which, as the court in *Lowery* stated, is not of the sort contemplated by § 1446(b). The "facts" contained in the cited publications and cases tell this Court nothing about the value of the claims made in this case.

S. Siniard. . . . Ford acknowledged that the Complaint does not contain a specific damage request, but noted that Plaintiff sought compensatory and punitive damages for the wrongful death of Deborah Siniard. As evidence that the claim in this case necessarily exceeded $75,000, Ford asserted that other Alabama courts have routinely entered wrongful death verdicts in excess of $75,000 in product liability claims. In support of this proposition, Ford listed numerous cases from various courts which resulted in plaintiffs' verdicts in wrongful death cases each of which exceeded $75,000. . . . While this Court agrees that the precepts set forth in *Lowery* require the remand of this case which was removed on nothing more than speculation about the amount in controversy, the Court cannot agree that it has the option of ignoring *Lowery* until after the mandate issues or the Supreme Court addresses that case."); *Carswell v. Sears, Roebuck & Co.*, 2007 WL 1697003, *1 (M.D. Ala. 2007) ("Prior to *Lowery*, Alabama personal injury cases and wrongful death cases with diversity of citizenship but no *ad damnum* were routinely removed to federal court and often kept there by the defendant asserting the existence of more than $75,000 in controversy and citing jury awards in excess of that amount in similar Alabama cases. In contrast to the former practice, *Lowery* now requires that the documents before the court on removal 'unambiguously

establish federal jurisdiction.' District courts in this circuit are no longer able to 'speculate in an attempt to make up for the notice's failings,' nor are courts able to consider 'evidence regarding the value of other tort claims.'").

   6.   While the undersigned considers the defendants' citation to and reliance on *Sanderson*[12] as yet another impermissible attempt by the removing parties to establish the value of the claims made in this case by citing to evidence (that is, another federal judge's ruling) regarding the value of another unrelated tort claim,[13] the undersigned takes this opportunity to look more closely at the defendants' central argument that the amount in controversy requirement is "readily deducible" (and apparent) from the injuries alleged (and damages sought) in the complaint. As heretofore indicated, readily means "easily" or "promptly." Nothing about plaintiff's allegations that he sustained "severe burns to his face, neck, shoulders, hands, and buttocks" and "permanent scarring" or his claims for medical expenses, pain and suffering, emotional distress, and mental anguish makes it "easy" for the undersigned to

---

[12]   The *Sanderson* case appears to be in the minority. *Siniard, supra; Carswell, supra*; *see also Williamson v. Home Depot USA, Inc.,* 2008 WL 2262044 (S.D. Fla. 2008); *Williams v. Wal-Mart Stores, Inc*., 534 F.Supp.2d 1239 (M.D. Ala. 2008).

[13]   In other words, the undersigned sees nothing different about the defendants' citation to and reliance on *Sanderson* and their citation to and reliance upon Alabama "punitive damages" publications and general precepts.

deduce that the amount in controversy requirement has been satisfied. Simply put, the foregoing is not clear evidence that the action satisfies the jurisdictional requirement. Instead, such "evidence" lends itself only to speculative musings regarding the value of such claims based upon the injuries alleged, a journey which *Lowery* does not allow.[14]  *See* 483 F.3d at 1214-1215 & 1215 ("If [the notice of removal and accompanying documents are] insufficient to establish that removal was proper or that jurisdiction was present, neither the defendant nor the court may speculate in an attempt to make up for the notice's failings. . . . The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars."). The amount in controversy requirement would have been readily deducible had the defendants established in their removal papers (and attachments) that

---

[14]     In truth, the defendants implicitly admit in the removal petition that they have no real knowledge of the value of plaintiff's claims (*see* Doc. 1, at ¶ 28 ("[I]f the plaintiff responds to this pleading and stipulates or otherwise contends that the amount in controversy is less than $75,000.00 at the trial of the matter in state court, then this Defendant will consent to the remand of this action.")), and state, moreover, that "[i]f the plaintiff contests that $75,000.00 is in controversy or if this court believes the issue requires a further evidentiary hearing, this Defendant respectfully requests that limited discovery be permitted on that issue[.]" In the undersigned's opinion, such statements, if not "tantamount to an admission that the defendants do not have a factual basis for believing that jurisdiction exists[,]" *Lowery, supra*, 483 F.3d at 1217, certainly cloak their jurisdictional arguments in prohibited speculative clothing, *id.* at 1215, n.67 ("If the court asserts jurisdiction on the basis of the defendant's speculative assertions, it implicitly accepts rank speculation as reasonable inquiry. This could undermine the requirement of reasonable inquiry not only in removal situations, but also in other contexts.").

plaintiff's medical expenses and lost wages were in excess of $75,000. *See Kok v. Kadant Black Clawson, Inc.,* 274 Fed.Appx. 856, 867 (11th Cir. 2008) ("Kok filed a motion to remand and to disavow any recovery beyond $74,999, but he did not assert that the amount in controversy was less than the jurisdictional threshold when he filed his complaint. Kadant opposed Kok's motion and calculated Kok's recovery for back pay from the date of his termination to trial to equal $94,963. . . . To support its calculation, Kadant submitted Kok's W-2 form that listed Kok's gross pay for the first 11 months of the year at $75,823.66 and an affidavit that stated that Kok's benefits within the same period were valued at $7,944.71. The district court correctly concluded that Kadant established that, at the time of removal, Kok's complaint for damages exceeded the amount in controversy required for diversity jurisdiction."). Following *Lowery*, however, "it is insufficient to rely on the severity of the injuries alleged[]" to establish that it is readily deducible or "facially apparent that the damages exceed the jurisdictional minimum[.]" *Williamson, supra*, at *2; *see also Williams, supra,* 534 F.Supp.2d at 1243-1244 ("Williams' complaint contained only unspecified damages; it stated only that she was damaged and injured by Wal-Mart's conduct, and it then listed her injuries as including a comminuted fracture in her leg and other injuries to

the femur, a fracture to her right hip, and injuries to her right shoulder that would require surgery. In spite of the relatively detailed listing of her injuries, the amount in controversy is not facially apparent from the complaint. Under these circumstances, with only unspecified damages in Williams's complaint, Wal-Mart had no basis to remove Williams's lawsuit based solely on her complaint."); *Carswell, supra*, at *1 ("Here, the Carswells' complaint contains no *ad damnum*. In its Notice of Removal, Sears attempts to show jurisdictional compliance with 28 U.S.C. § 1332(a) by asserting that the plaintiffs' own allegations demonstrate that Sally Carswell suffered a head injury that required surgery and that she is seeking compensation for her medical bills, pain and suffering, and mental anguish. Sears further states that the Carswells represented that Sally Carswell had incurred $38,136.96 in medical expenses as of November 2005. Because medical expenses are only one component of [the] Carswells' claim for compensatory damages and the plaintiffs also seek[] punitive damages, Sears reasons that 'it is foreseeable that Plaintiff[s] could constitutionally recover more than $75,000 in damages.[] On the record before it, however, the court finds that Sears's conclusion is speculative. The jurisdictional amount is not clearly stated on the face of the complaint and it is not readily deducible from the removal documents."); *see Middlebrooks,*

*supra*, at *1-*3 (court concluded that the jurisdictional amount in controversy was not readily deducible from a wrongful death complaint filed in the death of a 19-year old and seeking compensatory and punitive damages; if was determined that the first "other paper" from which the defendants could ascertain that plaintiff was seeking in excess of $75,000 was the transcript of the April 1, 2008 hearing, same reflecting plaintiff's admission that she was seeking in excess of $75,000).

7.      In light of the undersigned's understanding of the import of *Lowery* and the type of evidence that is needed to establish that removal is proper, it is recommended that the Court remand this case to state court based upon the removing parties' failure to establish by a preponderance of the evidence the amount in controversy requirement.

## <u>CONCLUSION</u>

The removing defendants have not established by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. Accordingly, the undersigned **RECOMMENDS** that the motion to remand this case to the Circuit Court of Perry County, Alabama (Doc. 15) be **GRANTED**.

The instructions which follow the undersigned's signature contain

24

important information regarding objections to the report and recommendation

of the Magistrate Judge.

**DONE** this the 22nd day of September, 2008.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

   s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE